(1 App. Div. 397.)

ROGERS v. O'BRIEN et al.

(Supreme Court, Appellate Division, First Department. February 7, 1896.)

INJUNCTION—MUNICIPAL OFFICERS.

 Under Laws 1892, c. 301, authorizing an action by a taxpayer to enjoin municipal officers from committing any illegal official act, or to prevent waste or injury to municipal property by them, a taxpayer claiming possession of land appurtenant to public wharfage, under authority from the dock commissioners, cannot maintain an action to enjoin such commissioners from interfering with his possession, where the commissioners claim that he occupies such property under an agreement to pay rent, which contract he refuses to perform.

Appeal from special term, New York county.

Action aided by temporary injunction by James Rogers against Edward C. O'Brien and others, dock commissioners, to enjoin defendants from requiring plaintiff to pay rent assessed for the use of property appurtenant to a wharf privilege. From an order vacating the injunction, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and WILLIAMS, JJ.

Charles Blandy, for appellant.

Theodore Connoly, for respondents.

RUMSEY, J. The plaintiff alleges that he is a resident and taxpayer of the city of New York, and has been assessed, within a year before the commencement of this action, for upward of $1,000; and

that the defendants are commissioners of docks of the city. He states that on the 1st of May, 1894, the commissioners of docks made a written lease to one William A. Wells of certain wharf property situated on the North river, between West 132d and West 133d streets; that, before the making of the lease, the defendants represented that a certain strip of land, 50 feet wide, and running the length of the bulkhead, and parallel to it, was a part of the appurtenances demised by the lease; and that, in pursuance of that representation, the lessee entered into possession of the strip of land, and continued to occupy it, without being disturbed, until the month of September, 1895; but that in the month of October, 1895, the defendants commenced negotiations with the plaintiff to compel him to pay for the use and occupancy of the strip of land, claiming that it did not pass by the lease. These negotiations were followed by a resolution passed by defendants on the 17th of October, 1895, that the plaintiff should pay for the use of that strip the sum of $1,000 per annum during the pleasure of the defendants. The plaintiff alleges that he resisted the efforts of the defendants to require him to pay this sum, claiming that the land passed under the lease, and that, if it did not pass under the lease, it was not property over which the defendants, as commissioners of docks, had any jurisdiction; but that afterwards the defendants sent a notice to the plaintiff that, unless he at once made a quarterly payment at the rate of $1,000 a year for the use of the premises, steps would be taken to remove his property, which had been stored upon the land, and to impose a fine upon him for violation of the regulations of the department. The plaintiff further alleges that he requested the board to reconsider their action, which they refused to do, and he alleges generally that their acts are illegal, and that, if they be not restrained from removing the plaintiff from the strip of land, he will suffer irreparable damage. There is no allegation in the complaint that the proposed acts of the defendants as commissioners will cause any waste or injury to the property of the corporation of the city of New York. Upon this complaint, and upon the affidavits served with it, a temporary injunction was granted, as demanded in the complaint, coupled with an order to show cause why such injunction should not be continued to the final judgment. Upon the hearing of the order to show cause, the defendants produced, among other things, a copy of the lease made between themselves and Wells, by which it appeared that on the 1st day of May, 1894, the defendants leased to Wells the wharfage which might arise or become due for the use and occupation, in the manner prescribed by law, of certain public wharf property, being the same more particularly described in the complaint. Wells covenanted in the lease that he would not at any time, in any manner, directly or indirectly, assign or sublet the wharfage therein demised, or any part thereof, to any person, without the consent of the defendants. The defendants denied that they made the representations mentioned in the complaint to the effect that the 50-foot strip of land passed as appurtenant to the lease, or that the lessee took possession of it under the lease. In their papers, they alleged

that the plaintiff took possession of the 50-foot strip of land; that the defendants insisted that he should pay $1,000 a year for the use of it, which he agreed to do; and that thereupon an agreement was made, by virtue of which the defendant leased to him, during the pleasure of the board of docks, the said 50-foot strip of land, at an annual rent of $1,000. This agreement is sworn to by Mr. Einstein, one of the commissioners, and by Mr. Edward S. Atwood, the superintendent of docks. It is not denied by Rogers. The only statement made by him with regard to it is contained in his communication to the board of docks to the effect that he never intended to acquiesce in it; that the agreement as made by him was tentative only. It is not denied by the defendants that they propose to remove the plaintiff from this 50-foot strip of land unless he pays the rent which he agreed to pay. Upon this fact, among others which were made to appear, the injunction was vacated upon the return of the order to show cause, and from the order vacating the injunction the plaintiff appeals.

It is not necessary upon this appeal to consider the question whether the plaintiff, in his individual right, may maintain an action to prevent the defendants from doing the act which they threatened to do. He makes no claim here that the action is brought upon any such theory. The only right which is set up in the complaint is the alleged right of Wells, based upon the lease, to take possession of this 50-foot strip as appurtenant to what was leased to him, and the fact that he did take possession of it under the lease. It appeared from the papers that, whatever Wells may have acquired under that lease, he could not sublet it or assign it to anybody else, and for that reason the plaintiff has no right here under this lease, as against these defendants. Neither is it necessary upon this appeal to decide the extent of the dominion of the defendants over the land in dispute. Any conclusion which should be reached in this action upon that question would be of no force as against Wells, who is not a party to the action, and it would not operate as an adjudication as to his rights. The only question that is to be decided here is whether, upon the allegations of the complaint and the facts stated in the papers, the plaintiff, as a taxpayer, can maintain this action under the provisions of chapter 301 of the Laws of 1892. That statute provides that all officers acting for any municipal corporation in this state may be prosecuted, and an action may be maintained against them, to prevent any illegal official act on the part of said officers, or to prevent waste or actual injury to any property, funds, or estate of such municipal corporation by certain persons more particularly described in the act. Laws 1892, c. 301. The plaintiff brings himself within the description of the persons who may maintain such actions, but there is no allegation, nor can it be inferred from the statements in the papers, that the acts of the defendants will in any way involve any waste or injury to the property or funds of the city; and therefore the only question left to be examined is whether the action which it is alleged the commissioners are about to take is illegal, within the meaning of this statute.

The substance of the allegation is that the defendants, as commissioners of docks, claim that they have a title to this 50-foot strip of land, and propose to assert it, and it is from this action that plaintiff wishes to restrain them. He makes no charge that they intend any fraud towards the city, or that they are guilty of any bad faith in their official action, so far as the city is concerned. He stands solely on his claim that they have no title to this strip, and therefore it is illegal on their part to assert it, or that by the lease Wells acquired a right to the possession of the strip of land. If this strip is wharf property, within the meaning of the statute, then, clearly, the defendants, composing the department of docks, have exclusive charge and control of it (Consolidation Act, § 711); and they also have the exclusive power to make regulations with regard to it (Id. § 717). In view of the allegation that the understanding between Wells and the defendants was that this 50-foot strip of land passed by the lease to Wells, and that he took possession of it under his lease, it is difficult to see how the plaintiff can allege here that the property is not in the control of the defendants, under the provisions of the statute just cited. But passing that point, and conceding that there may be some doubt upon that subject, the fact remains that the defendants insist that this property is within their control, and that they propose to do with regard to it that which they undoubtedly have the right to do if they are right in their contention. If they have the charge of this property, it is undoubtedly their duty to keep off intruders, and to take possession of the land. The performance of that duty constitutes no fraud or bad faith towards the city. If it can be said to be illegal, it is only illegal in the sense that the act of any owner of property is illegal if he is mistaken as to his rights. From the standpoint of the plaintiff, the illegality here simply consists in the fact that defendants claim, as against the plaintiff, a right based upon a title which they have not in fact. The alleged illegality exists simply with relation to the plaintiff, and because, as against him, they have no right or title which they can assert. Giving to the contention of the plaintiff the broadest possible meaning, it extends no further than that.

To this contention there are two answers. In the first place, the taxpayers' act was not intended to restrain an attempt by municipal officers to perform their duty in good faith in an effort to protect the property of a municipal corporation. To enable the taxpayer to interfere and prevent the action on their part, the courts require something more,—some fraud or bad faith, or some such action as is beyond the power or authority of the officer, and which will waste the property of the corporation or impose improper burdens upon the body of the taxpayers. As is said by the court of appeals, the courts will not become arbitrators between taxpayers and their municipal officers in every instance of disagreeing opinions or conflicting judgments, and have decided that, jurisdiction in the officials existing, the courts can interfere in actions of this kind only where some fraud or collusion or bad faith is alleged and proved. Zeigler v. Chapin, 126 N. Y. 342, 27 N. E. 471. To

hold otherwise would be to enable a taxpayer of the city to inter-fere in every case where a dispute arises between the city board and any other individual, in which the board proposes to assert a legal right, and it would make no difference whether the person against whom the right was asserted was made a party to the action or not. Such a construction of the law would draw into a court of equity every possible dispute which might arise between any municipal authority and any other person. Such a construction cannot be permitted. If, in behalf of the city, public officials are in good faith insisting upon a right of property against a person, although they may be wrong in their claim as to what the law is, this statute does not authorize another taxpayer to interfere to re-strain them. If another taxpayer cannot interfere, certainly the one against whom the right is asserted cannot interfere in his right as a taxpayer. He must, to protect his private right, pursue the same remedy that any other citizen must pursue to protect his private right against any other than a public officer.

In this particular case, however, the plaintiff has, by the estab-lished facts, put himself out of court. His own allegation is that he took possession of this property under the title which the lessee acquired by the lease from the defendant. The facts establish that he remains in possession during the pleasure of the defendants, by an agreement with them. In either aspect of the case, he cannot be heard as a taxpayer here to say that the defendants, with whom he has entered into a contract, may not proceed to assert their rights of property as against him. There is no aspect of this case in which it would have been proper to grant this injunction, and the order vacating it must therefore be affirmed, with $10 costs and disbursements. All concur.